1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Matthew J. Preusch (Bar No. 298144)
mpreusch@kellerrohrback.com
**KELLER ROHRBACK L.L.P.**
1129 State Street, Suite 8
Santa Barbara, CA 93101
Tel: (805) 456-1496, Fax: (805) 456-1497

**Attorneys for Plaintiffs**
**(Additional Counsel on Signature Page**)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

ELIZABETH CROSSON, KIMI
JANSON, MARTHA ASAPH,
KAREN HOMMAN, MATTHEW
CURE, KATHRYN ELIZA WALSH,
RACHEL OTTO, DUANE INOUE,
LAURA RAY, ROBERT
PERRYMAN, CYNTHIA
KIRTLAND, and, WILLIAM
HARLAN and EMILY DIZNOFF,
individually and on behalf of all
others similarly situated,

,

Plaintiffs,

v.

VOLKSWAGEN GROUP OF
AMERICA, INC., and
VOLKSWAGEN AG

Defendants.

No.

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

**KELLER ROHRBACK L.L.P.**
1129 STATE STREET, SUITE 8, SANTA BARBARA, CA 93101

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CA 93101

# TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................ 1

II.  NATURE OF THE ACTION ........................................................ 1

III. PARTIES ..................................................................................... 6

IV.  JURISDICTION AND VENUE .................................................. 8

V.   FACTS ....................................................................................... 11

   A.   Defendants Touts Their Diesel Vehicles as Being Fuel Efficient and Good
        for the Environment ............................................................... 11

   B.   Volkswagen Intentionally Hid the Excessive and Illegal Levels of Pollution
        Emitted from its Cars. ........................................................... 16

   C.   Defendants Have Profited Handsomely From Their Diesel Vehicles. ........ 21

   D.   Volkswagen's Illegal Actions Have Caused Class Members Significant
        Harm. ..................................................................................... 22

VI.  PLAINTIFFS' FACTS ................................................................ 24

   A.   Plaintiff Elizabeth Crosson ..................................................... 24

   B.   Plaintiff Kimi Janson .............................................................. 25

   C.   Plaintiff Martha Asaph ............................................................ 26

   D.   Plaintiffs Karen Homman and Matthew Cure .......................... 27

   E.   Plaintiff Kathryn Eliza Walsh ................................................. 28

   F.   Plaintiff Rachel Otto ............................................................... 29

   G.   Plaintiff Duane Inoue ............................................................. 30

   H.   Plaintiff Laura Ray ................................................................. 31

   I.   Plaintiff Robert Perryman ....................................................... 33

J.   Plaintiff Cynthia Kirtland ........................................................33

K.   Plaintiffs William Harlan and Emily Diznoff..............................34

VII.  CLASS ACTION ALLEGATIONS .................................................36

1.   Numerosity: Federal Rule of Civil Procedure 23(a)(1). .........37

2.   Commonality and Predominance: Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3)...................................................38

3.   Typicality: Federal Rule of Civil Procedure 23(a)(3)............39

4.   Adequacy: Federal Rule of Civil Procedure 23(a)(4). ...........39

5.   Declaratory and Injunctive Relief: Federal Rule of Civil Procedure 23(b)(2). ...................................................................40

6.   Superiority: Federal Rule of Civil Procedure 23(b)(3). .........40

VIII.  ANY APPLICABLE STATUTES OF LIMITATION ARE TOLLED ........41

A.   Discovery Rule Tolling................................................................41

B.   Tolling Due To Fraudulent Concealment ....................................42

C.   Estoppel.......................................................................................43

IX. CAUSES OF ACTION ...................................................................43

A.   Claims Asserted on Behalf of the Class .....................................43

B.   State-Specific Claims...................................................................61

X.  REQUEST FOR RELIEF................................................................92

XI. DEMAND FOR JURY TRIAL .......................................................93

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CA 93101

CLASS ACTION COMPLAINT

## I.    INTRODUCTION

Plaintiffs Elizabeth Crosson, Kimi Janson, Martha Asaph, Karen Homman, Matthew Cure, Kathryn Eliza Walsh, Rachel Otto, Duane Inoue, Laura Ray, Robert Perryman, Cynthia Kirtland, and William Harlan and Emily Diznoff ("Plaintiffs"), individually and on behalf of all others similarly situated, allege the following against Volkswagen Group of America, Inc. and Volkswagen AG ("Defendants" or "Volkswagen") based where applicable on personal knowledge, information and belief, and the investigation of counsel. This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).

## II.    NATURE OF THE ACTION

1.    This action is not about corporate negligence; rather, it is about a global auto manufacturer's intentional deception of well-meaning, conscientious consumers and regulators, and its large scale, misguided plan to profit by gaming the system rather than playing by the rules.

2.    This nationwide class action concerns the intentional installation of so-called defeat devices on at least 482,000 diesel Volkswagen and Audi vehicles sold in the United States since 2009 ("Defeat Device Vehicles"). Defendants marketed those vehicles as environmentally-friendly cars that possessed the holy grail of automotive qualities: extremely high fuel efficiency and performance, with

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CA 93101

CLASS ACTION COMPLAINT

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CA 93101

very low emissions. Although Defendants successfully marketed these expensive cars as "green," their environmentally-friendly representations were a sham. Defendants did not actually make cars with those desirable and advertised attributes.

3.      According to the U.S. Environmental Protection Agency (EPA), Volkswagen installed its "defeat device" in at least the following diesel models of its vehicles: Model Year ("MY") 2009-2015 Jetta; MY 2009-2014 Jetta Sportwagen, MY 2012-2015 Beetle and Beetle Convertible; MY 2010-2015 Golf; MY 2015 Gold Sportwagen; MY 2012-2015 Passat; and MY 2010-2015 Audi A3. The California Air Resources Board is currently investigating whether the Defendants installed the device in other cars as well, so additional vehicle models and model years may be added to this list when new facts are discovered.

4.      Instead of delivering on their promise of extremely high fuel mileage coupled with low emissions, Defendants devised a way to make it appear that their cars did what they said they would when, in fact, they did not. Put simply, Defendants lied and continued to lie after the fact.

5.      As Michael Horn, President and CEO of Volkswagen Group of America, reportedly admitted before unveiling the 2016 Volkswagen Passat in New York on September 21, 2015:

As you have seen since Friday, the EPA, the Environmental Protection Agency, has issued a statement and reality that Volkswagen Group manipulated engine software in our TDI diesel cars, and we violated emissions standards. The CEO of our parent company, Dr. Martin Winterkorn, said yesterday Volkswagen will fully cooperate with the responsible agencies, and much much more important as I see it, he stated that he was personally and deeply sorry for this—that Volkswagen has broken the trust of our customers, and the public here in America. And lastly he stated that this matter, and this is I think common sense, now this is the first priority for him personally and for the entire Board of Management. So let's be clear about this: our company was dishonest with the EPA and the California Air Resources Board, and with all of you. And in my German words, we've totally screwed up. We must fix those cars, and prevent this from ever happening again, and we have to make things right—with the government, the public, our customers, our employees, and also very importantly our dealers. This kind of behavior, I can tell you out of my heart, is completely inconsistent with our core values. The three core values of our brand are value, innovation, and in this context very importantly, responsibility: for our employees, for our stakeholders,

CLASS ACTION COMPLAINT

and for the environment. So it goes totally against what we believe is right. Along with our German headquarters, we are committed to do what must be done, and to begin to restore your trust.

6.     As Mr. Horn admitted, Volkswagen "screwed up." It did so by intentionally designing and installing defeat devices that work by switching on the full emissions control systems in Defendants cars only when the car is undergoing periodic emissions testing. The technology needed to control emissions from Defendants' cars to meet state and federal emissions regulations reduces their performance, limiting acceleration, torque, and fuel efficiency.

7.     To hide this, the defeat device simply shuts off most of the emissions control systems in the car once the car has completed its emissions test. While that might have made the cars more fun to drive, it resulted in Defendants cars sending up to 40 times as much pollution into the environment as is allowed under the Clean Air Act and state regulations.

8.     As of September 21, 2015, *The New York Times* reported that while it is possible to lower the levels of nitrogen oxide emitted by diesel engines, the software Volkswagen installed instead:

"[S]idestepped this trade-off by giving a misleadingly low nitrogen-oxide reading during [standard emissions] tests. The software measured factors like the position of the steering wheel, the vehicle's

CLASS ACTION COMPLAINT

speed and even barometric pressure to sense when the car was being tested….”

9.     As of today, Volkswagen has admitted that approximately 11 million vehicles worldwide are affected by its deception. Defendants stocks have plummeted and it reportedly is “setting aside the equivalent of half a year’s profits—6.5 billion euros, or about $7.3 billion” in a preemptive maneuver to downplay public scrutiny. In a statement issued today by the Executive Committee of Volkswagen AG’s Supervisory Board, the Committee “recognizes…the economic caused [by the manipulation of the emissions data.]”[1]

10.    Defendants’ violations are explained in a Notice of Violation the EPA issued to Defendants, as well as a letter from the California Air Resources Board (“CARB”), copies of which are attached to this Class Action Complaint as Exhibits A and B, respectively.

11.    Because of Defendants actions, the cars it sold to Plaintiffs are not what was promised by Volkswagen.  They are not environmentally friendly, “clean” diesels.  Instead, they are dirty diesels: cars that pollute so much that they violate state and federal environmental protection laws.   Moreover, when the emissions systems designed to decrease pollution are activated, the cars’

---

[1] http://media.vw.com/release/1071/

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CA 93101

performance is diminished and they get worse mileage than advertised by Volkswagen.

12.     These untenable circumstances not only undermine the reasons consumers paid a premium for their purportedly "clean" diesel cars but substantially decrease the resale value of the vehicles.

### III.   PARTIES

13.     Plaintiff Elizabeth Crosson is a resident and citizen of Los Angeles, Los Angeles County, California.

14.     Plaintiff Kimi Janson is a resident and citizen of Cincinnati, Hamilton County, Ohio.

15.     Plaintiff Martha Asaph is a resident and citizen of Cotopaxi, Fremont County, Colorado.

16.     Plaintiffs Karen Homman and Matthew Cure are residents and citizens of Baltimore, Baltimore County, Maryland.

17.     Plaintiff Kathryn Eliza Walsh is a resident and citizen of Meggett, Charleston County, South Carolina.

18.     Plaintiff Rachel Otto is a resident and citizen of Salt Lake City, Salt Lake County, Utah.

19.     Plaintiff Duane Inoue is a resident and citizen of Mililani, Honolulu County, Hawaii.

CLASS ACTION COMPLAINT

20.     Plaintiff Laura Ray is a resident and citizen of Sewanee, Franklin County, Tennessee.

21.     Plaintiff Robert Perryman is a resident and citizen of Stigler, Haskell County, Oklahoma.

22.     Plaintiff Cynthia Kirtland is a resident and citizen of Red Hook, Dutchess County, New York.

23.     Plaintiffs William Harlan and Emily Diznoff are residents and citizens of Barnardsville, Buncombe County, North Carolina.

24.     Volkswagen Group of America, Inc. ("Volkswagen") is a corporation doing business in every U.S. state and the District of Columbia, and is organized under the laws of New Jersey, with its principal place of business at 2200 Ferdinand Porsche Dr., Herndon, Virginia 20171. Volkswagen is therefore a citizen of New Jersey and Virginia. *See* 28 U.S.C. § 1332(d)(10).

25.     Volkswagen AG is the parent corporation and sole owner of Volkswagen Group of America, Inc. (collectively "Volkswagen"). Volkswagen AG is based in Germany and directly controls and directs the actions of Volkswagen Group of America, Inc., which acts as its agent in the United States. As a result, this Court has specific jurisdiction over Volkswagen AG.

26.     At all relevant times, Volkswagen manufactured, distributed, sold, leased, and warranted the Defeat Device Vehicles under the Volkswagen and Audi

brand names throughout the nation. Volkswagen and/or its agents designed the CleanDiesel engines and engine control systems in the Defeat Device Vehicles, including the "defeat device." Volkswagen also developed and disseminated the owners' manuals and warranty booklets, advertisements, and other promotional materials relating to the Defeat Device Vehicles.

## IV.   JURISDICTION AND VENUE

27.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one Class member is of diverse citizenship from one Defendants, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

28.     This Court has personal jurisdiction over Defendants Volkswagen Group of America, Inc., because it conducts business in Virginia, and has sufficient minimum contacts with Virginia.

29.     This Court has specific jurisdiction over Volkswagen AG because it has purposefully availed itself of this forum by directing its agents and distributor – Volkswagen Group of America – to take action here.

30.     Volkswagen AG is the sole owner of Volkswagen Group of America. It uses its agent, Volkswagen Group of America, to sell its cars in the United States. Not only does Volkswagen AG use its agent, Volkswagen Group of

America, to perform this critical work, it also intimately directs the actions of Volkswagen Group of America, ranging from minute production line decisions to broad marketing strategies.

31.     The remarkable level of centralized and intimate control Volkswagen AG and former CEO Winterkorn exert over Volkswagen Group of America is well documented. Volkswagen AG itself describes this highly-centralized structure in its corporate governance document as follows: Volkswagen AG "targets and requirements [are] laid down by the Board of Management of Volkswagen AG or the Group Board of Management [and] must be complied with in accordance with the applicable legal framework."  This top-down governance manifests in Volkswagen AG's intimate management of Volkswagen Group of America. For example, in 2011, when Dr. Winterkorn visited the newly built Volkswagen plant in Tennessee, Bloomberg Business reported that "he berated staff for hanging chrome parts for air vents, doors and gear shifts on the wall. To check that they uniformly glistened before agreeing to use them in the sedan, he wanted them displayed on a table with light shining down at the same angle that customers would see the parts in the car."

32.     That single plant in Chattanooga, Tennessee is Volkswagen AG's only plant in the United States, and it conducts final assembly of only one of the numerous models that Volkswagen AG sells in the United States. Even then, the

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CA 93101

majority of components and parts are manufactured in Volkswagen AG factories in Europe and around the world, or purchased from vendors, and shipped to Tennessee to be assembled. The other models that Volkswagen Group of America markets and sells in the United States, including vehicles at issue in this lawsuit, are assembled elsewhere in the world, including in Puebla, Mexico and Ingolstadt and Wolfsburg, Germany. The 2.0 liter TDI engines that each of the affected vehicles uses are among the components manufactured by Volkswagen AG factories outside the United States, as are the exhaust system components used to regulate emissions. In sum, Volkswagen AG exerts significant, and sometimes total, control over the design, technology, marketing, and manufacturing of the vehicles it sells through Volkswagen Group of America.

33.     Bloomberg Business has also noted that "[d]ecision-making at Volkswagen is highly centralized. Winterkorn and a couple dozen managers vet product plans in Wolfsburg, including detailed lists of components that differentiate between new and standardized parts. Winterkorn was aiming to loosen that structure by pushing more authority to brand and regional managers." Volkswagen AG's attempts to decentralize are not new; indeed as far back as 2007 *The New York Times* reported that Volkswagen AG was undergoing a "broad reorganization that would centralize control over its myriad brands [including Volkswagen Group of America] and cement the power of its new chief executive,

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CA 93101

Martin Winterkorn." Whatever decentralization Mr. Winterkorn was hoping to accomplish, however, has not come to pass, as he has now stepped down as Volkswagen's CEO. In short, Volkswagen AG tightly controls the actions of its agent, Volkswagen Group of America, to perform the critical task of selling its cars in the United States. As a result, this Court has specific jurisdiction over Volkswagen AG.

34.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred and/or emanated from this District, and because Defendants have caused harm to Class members residing in this District.

## V.     FACTS

35.     Defendants intentionally designed and sold cars that misled consumers and regulators about the amount of pollution those cars created and the fuel efficiency they produced. Despite touting themselves as an environmentally conscientious company that produced thoughtful cars for people who cared about the environment, Defendants sold expensive cars that produced pollution at orders of a magnitude above federal and state regulations, and then intentionally and knowingly hid the truth about those cars.

**A.     Defendants Touts Their Diesel Vehicles as Being Fuel Efficient and Good for the Environment**

36.     For years, Volkswagen has advertised its diesel vehicles as low-

CLASS ACTION COMPLAINT

emission, fuel-efficient cars. Indeed, this marketing message is at the core of its image in the United States. It has been a successful advertising campaign; Volkswagen has become the largest seller of diesel passenger vehicles in the United States.

37.     Defendants' success is based in large part on promoting their diesel cars as "clean" and "green" vehicles. Indeed, being both highly efficient and "clean" are the centerpieces of Defendants diesel engine marketing campaign.



"CleanDiesel" is in the very name of the vehicles about which Defendants lied.

38.     And Defendants continued to lie. Although Volkswagen was aware of the recall and defect concerning the Defeat Device Vehicles, it continued to

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CA 93101

mislead consumers in advertisements appearing on its webpage as recently as September 21, 2015. These ads, pictured below, are rapidly being removed from Volkswagen's websites in an attempt to further hide its wrongdoing. Defendants continued to represent the Defeat Device Vehicles as "cleandiesel" and that it "…has sold more diesel cars in the U.S. than every other brand combined. ***Promise kept.*** [2]" (emphasis added).



39.     Volkswagen's apparent concern for the environment is evident beyond just the model names and purported attributes of their vehicles. For example, on the "Environment" page of its website, Volkswagen Group of America states that it takes "environmental responsibility very seriously. When it comes to making our cars as green as possible, Volkswagen has an integrated

_____

[2] *See* http://www.vw.com/features/clean-diesel/ (last visited Sept. 21, 2015). The content has since been removed.

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CA 93101

strategy focused on reducing fuel consumption and emissions, building the world's cleanest diesel engines and developing totally new power systems, which utilize new fuel alternatives."

40.    Volkswagen bolsters its apparent environmental bone fides by trumpeting the fact that the Audi A3 TDI and VW Jetta TDI were named the 2010 Green Car of the Year and the 2009 Green Car of the Year, respectively.

41.    As recently as September 21, 2015,[3] Defendants continued to mislead consumers, touting the supposedly reduced greenhouse gas emission of its vehicles on its "CleanDiesel" webpage.  That misleading statement has since been removed.



---

[3] *See* http://www.audiusa.com/technology/efficiency/tdi?csref=116751439289858719 (last visited Sept. 21, 2015). The content has since been removed.

CLASS ACTION COMPLAINT

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CA 93101

42.     Defendants also launched a "Think Blue" program, which they explained is part of their policy of being "more responsible on the road and more environmentally conscious—not just in our cars."

43.     Beyond merely advertising, Defendants supported and directed a website to promote its "clean" diesel technology, www.clearlybetterdiesel.org, which says the technology reduces smog and "meets the highest standards in all 50 states, thanks to ultra-low sulfur diesel (ULSD) fuel and innovative engine technology that burns cleaner."

44.     Defendants goes for far as to use the tagline "Truth in Engineering" to promote its Audi brand:



45.     Unfortunately for consumers who bought Defendants cars and for people who breathe the air into which Defendants cars emit extraordinary amounts of pollutants, Defendants engineering was far from "truthful." Volkswagen has

designed and sold cars that emit pollutants at breath-taking levels, failing state and federal environmental regulations by incredible margins.

**B.      Volkswagen Intentionally Hid the Excessive and Illegal Levels of Pollution Emitted from its Cars.**

46.      The EPA's investigation of Volkswagen was prompted by a May 15, 2014, publication titled "In-Use Emissions Testing of Light-Duty Diesel Vehicles in the United States" by the Center for Alternative Fuels, Engines & Emissions (CAFEE) at West Virginia University ("the CAFEE Report").

47.      CAFFE was contracted by the International Council of Clean Transportation (ICCT) to conduct in-use testing of three light-duty diesel vehicles. According to the CAFEE Report, in the tested vehicles "real-world NOx emissions were found to exceed the US-EPA … standard by a factor[s] of 5 to 35."

48.      Those findings show that, contrary to Volkswagen's self-promotion as a "green" company, its diesel cars are unhealthy and unlawful.

49.      On September 18, 2015, the EPA issued a Notice of Violation ("NOV"). The NOV explains that Defendants have installed sophisticated software in the Volkswagen and Audi diesel vehicles sold by Defendants in the United States that detects when the vehicle is undergoing official emissions testing and turns full emissions controls on only during the test. At all other times that the vehicle is running, however, the emissions controls are deactivated, meaning that pollution is freely released into the environment at levels that exceed those allowed

by federal and state clean air regulators. This software produced and used by Volkswagen is a "defeat device" as defined by the Clean Air Act.

50.    Most modern engines, including Volkswagen's "CleanDiesel" engines, use computerized engine control systems to monitor sensors throughout a car's engine and exhaust systems and control operation of the car's systems to ensure optimal performance and efficiency. These functions can include controlling fuel injection, valve and ignition timing, and, as in Volkswagen's "CleanDiesel" engines, operating the engine's turbocharger. The engine control computer can, for example, ensure that the air-to-fuel mixture is correct based on sensor readings such as throttle position, amount of air flowing into the engine, and engine temperature.

51.    These engine control computers also receive data from sensors in the car's exhaust system that measure the amounts of chemical substances included in the car's exhaust. That data provides a measure of the engine's operation and efficiency, and is thus used by the engine control computer in operating the car's systems to ensure the desired performance and efficiency.

52.    Because modern cars include these sophisticated computers and sensors throughout the car's systems, emissions testing sometimes uses a car's existing sensors to measure the presence of pollutants and track compliance with EPA and state emissions standards. Emissions testing stations plug a diagnostic

CLASS ACTION COMPLAINT

device into the car's on-board diagnostics ("OBD II") port and use the car's exhaust sensors during the testing procedure to measure the substances emitted. Some states, instead of or in addition to an OBD II diagnostic device, use a measurement probe inserted into the car's exhaust pipe to measure the chemicals emitted.

53.      Volkswagen programmed the engine control computers in the Defeat Device Vehicles with software that detects when the cars are undergoing emissions testing, and then operates the car's engine and exhaust systems to ensure that emissions comply with EPA pollutant standards. When the car is not being emissions tested—that is, under the vast majority of operating conditions—the engine control systems operate the vehicle in a manner that does not comply with EPA emissions requirements.

54.      This graphic prepared by Reuters summarizes that process:

1
2
3
4
5
6
7
8
9
10
11

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CA 93101

12
13
14
15
16
17
18
19
20
21
22
23
24
25



26       55.   In short, this software allows Defendants diesel vehicles to meet

27   emissions standards in labs or state testing stations while permitting the vehicles to

28

         CLASS ACTION COMPLAINT

emit nitrogen oxides (NOx) at up to 40 times the standard allowed under United States laws and regulations during the normal operation of the vehicles.

56.    As the journal Popular Mechanics reported, non-Volkswagen diesels commonly use urea injection to "neutralize" NOx emission, but those systems add weight and complexity to the engine. "Everyone wondered how VW met emissions standards while foregoing urea injection. As it turns out, they didn't. It wasn't magical German engineering. Just plain old fraud," the journal reported.

57.    NOx pollution contributes to nitrogen dioxide, ground-level ozone, and fine particulate matter. Exposure to these pollutants has been linked with serious health dangers, including asthma attacks and other respiratory illness serious enough to send people to the hospital. Ozone and particulate matter exposure have been associated with premature death due to respiratory-related or cardiovascular-related effects. Children, the elderly, and people with pre-existing respiratory illness are at an acute risk of health effects from these pollutants.

58.    The Clean Air Act has strict emissions standards for vehicles, and it requires vehicle manufacturers to certify to the EPA that the vehicles sold in the United States meet applicable federal emissions standards to control air pollution. Every vehicle sold in the United States must be covered by an EPA-issued certificate of conformity. Under federal law, cars equipped with defeat devices,

which reduce the effectiveness of emissions control systems during normal driving conditions, cannot be certified.

59.     This is not the first time Volkswagen allegedly engineered vehicles to cheat emission standards. As reported by the *Los Angeles Times*, Volkswagen paid a $120,000 fine to EPA in 1974 in order to settled charges that "it gamed pollution control systems in four models by changing carburetor settings and shutting off an emissions-control system at low temperatures."

60.     Volkswagen apparently did not learn from that experience. By manufacturing and selling cars with defeat devices that allowed for higher levels of emissions than were certified to the EPA, Volkswagen violated the Clean Air Act, defrauded its customers, and engaged in unfair competition under state and federal laws.

**C.     Defendants Have Profited Handsomely From Their Diesel Vehicles.**

61.     Defendants charge substantial premiums for the Defeat Device Vehicles. For example, according to Defendants website, for the 2015 Volkswagen Jetta, the base S model with a gasoline engine has a starting MSRP of $18,780. The base TDI S CleanDiesel, however, has a starting MSRP of $21,640, a price premium of $2,860. The CleanDiesel premium compared to the highest trim Jetta models with a comparable four-cylinder turbocharged gasoline engine is

CLASS ACTION COMPLAINT

substantially higher: The Jetta SE has a starting MSRP of $20,095, while the CleanDiesel TDI SEL MSRP is $26,410, a 31% premium.

62.     These premiums occur across all of the vehicles in which Defendants installed its "defeat device" for emissions testing, ranging from roughly $1000 for a mid-tier Golf, to $2,900 for a base-level diesel Jetta, to nearly $7,000 for a top-line diesel Passat.

**D.     Volkswagen's Illegal Actions Have Caused Class Members Significant Harm.**

63.     The EPA has ordered Defendants to recall the Defeat Device Vehicles and repair them so that they comply with EPA emissions requirements. But that recall will not compensate Plaintiffs and the class for the significant harm Defendants deception has caused. That is true for at least two reasons.

64.     First, any repairs performed as part of the recall are likely to diminish the performance of the Defeat Device Vehicles. Volkswagen will likely not be able to make those vehicles compliant with state and federal regulations without degrading performance, fuel efficiency, or both. That is so because any solution will likely involve reprogramming the Defeat Device Vehicles' software to engage the emissions control equipment (which currently only operates when the vehicles are being emissions tested) at all times in a manner that reduces engine power and fuel economy to bring NOx emissions within legal limits. Plaintiffs' and Class members' cars will therefore not perform as advertised.

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CA 93101

65.     Second, the recall cannot compensate for the financial damages they have suffered, including the premium Plaintiffs and the Class paid for their "clean" diesel vehicles, the inevitable reduction in resale value caused by the recall, and the increase in fuel expenses as the vehicles' become less efficient following reprogramming.

66.     For those reasons, as a result of Volkswagen's unfair, deceptive, and/or fraudulent business practices, and its failure to disclose that under normal operating conditions the Defeat Device Vehicles emit 40 times the allowed levels, owners and/or lessees of the Defeat Device Vehicles have suffered losses in money and/or property.

67.     Had Plaintiffs and Class members known of the "defeat device" at the time they purchased or leased their Defeat Device Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

68.     According to media sources, Volkswagen's CEO, Martin Winterkorn, said in a statement that he was "deeply sorry that we have broken the trust of our customers and the public," and that Defendants would be suspending sales of some 2015 and 2016 vehicles with 2.0 liter diesel engines. While Defendants candor about its breach of trust is notable, it cannot compensate Plaintiffs and Class members for the damages they have incurred.

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CA 93101

69.     In sum, Volkswagen's deliberate strategy to value profit over the truth, human health, and the environment, has caused serious harm to consumers nationwide.

## VI.    PLAINTIFFS' FACTS

### A.    Plaintiff Elizabeth Crosson

70.     Plaintiff Elizabeth Crosson is a resident of Los Angeles, California.

71.     Ms. Crosson has owned Volkswagens for nearly her entire driving career.

72.     Currently, she owns a 2010 Jetta TDI, which she bought as a Volkswagen Certified Pre-Owned vehicle from a Volkswagen dealership in Santa Monica, California.

73.     To the best of her recollection, Ms. Crosson purchased her diesel Jetta for approximately $18,000, which represented a significant premium over the equivalent gasoline version.

74.     Ms. Crosson is an environmental attorney who is deeply concerned about air quality and the impacts vehicle emissions have on human health and the environment.

75.     Ms. Crosson chose the diesel Jetta because Volkswagen advertised the vehicle as "CleanDiesel," offering efficient fuel economy and environmentally friendly emissions combined with excellent performance.

CLASS ACTION COMPLAINT

76.     Ms. Crosson would never have purchased the car in the first place if she knew the truth about its emission levels, and is disappointed that she bought a car the Defendants represented to her pollutes far less than it actually does.  She is concerned that any fix Defendants implement will diminish performance and fuel economy.  She would never have bought the car if it did not offer the combination of performance, fuel economy, and clean emissions that Defendants advertised.

**B.      Plaintiff Kimi Janson**

77.     Plaintiff Kimi Janson, a resident of Cincinnati, Ohio, purchased a 2013 Volkswagen Jetta TDI new from a dealership in Fairfield, Ohio, on or about October 29, 2012. She paid $27,330.

78.     The Jetta she purchased included the following environmental information on a window decal:



79.     Ms. Janson chose the Jetta TDI primarily because Volkswagen advertised the vehicle as "CleanDiesel," offering efficient fuel economy and environmentally friendly emissions combined with excellent performance.

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CA 93101

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CA 93101

80.    Ms. Janson planned to drive the car for as long as it ran, or possibly to drive it for at least eight years before giving it to a family member. Because she planned to keep the car for a long time, she also purchased the longest extended warranty available. Now that she has learned that the car is much less environmentally friendly than advertised, she no longer wishes to drive the car as much or for as long. However, selling the car is not an attractive option because, due to Volkswagen's conduct, the resale value has been severely diminished.

81.    Ms. Janson would never have purchased the car in the first place if she knew the truth about its emission levels, and is disappointed that she bought a car that Defendants represented to her pollutes far less than it actually does. She is concerned that any fix Defendants implements will diminish performance and fuel economy. She would not have bought the car if it did not offer the combination of performance, fuel economy, and clean emissions that Defendants advertised.

## C.    Plaintiff Martha Asaph

82.    Plaintiff Asaph, a resident of Cotopaxi, Colorado, bought a new 2011 Jetta Sportwagen TDI at a dealership in Colorado Springs, Colorado, on May 24, 2011.

83.    Before buying the Sportwagen, she read Volkswagen's brochures and researched the Jetta's emission levels along with other characteristics. She relied

CLASS ACTION COMPLAINT

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CA 93101

on Volkswagen's statements that the Jetta was a "clean" diesel with low emissions when she decided to buy it.

84.     Now that Volkswagen has admitted it deceived Ms. Asaph and other consumers, and that her diesel emits up to 40 times permissible limits of some pollutants, she is almost ashamed to be driving it.

85.     Ms. Asaph has been harmed in that she paid a premium for a car based on representations about qualities it did not have, and she recognizes that the resale value of her Sportwagen has dropped dramatically.

**D.     Plaintiffs Karen Homman and Matthew Cure**

86.     Plaintiffs Homann and Cure, husband and wife, are residents of Baltimore, Maryland. In November 2014 they bought a 2015 Golf TDI at a dealership in Laurel, Maryland, the most recent of several Volkswagens the couple has owned.

87.     The low emissions that Volkswagen promised in their clean diesel vehicles, such as the Golf, was a deciding factor for Homann and Cure's decision to purchase a TDI. Other makes and models they considered were hybrid models or other low emission vehicles.

88.     The couple was deeply disappointed to learn they are driving a high-polluting car. They have asked Volkswagen if they can return it, or at least use a loaner car until the Golf is repaired, but have been refused.

CLASS ACTION COMPLAINT

89.　　They are also concerned that any recall will diminish the emissions and performance characteristics of their Golf, meaning they will have paid a premium for features their car no longer has.

90.　　The couple has therefore been harmed by Volkswagen's deception, and they face a concrete risk of additional, future injury.

**E.　Plaintiff Kathryn Eliza Walsh**

91.　　Plaintiff Liza Walsh is a resident and citizen of Meggett, South Carolina, where she purchased a new 2014 Jetta Wagon TDI from a Volkswagen dealership in 2014.

92.　　Ms. Walsh paid $28,900 for her diesel Jetta, which represented a significant price premium over the gasoline model.

93.　　Ms. Walsh chose the diesel Jetta Wagon because Volkswagen advertised the vehicle as "CleanDiesel," offering efficient fuel economy and environmentally friendly emissions combined with excellent performance.

94.　　Ms. Walsh would never have purchased the car in the first place if she knew the truth about its emission levels, and is disappointed that she bought a car that Defendants represented to her pollutes far less than it actually does. She is concerned that any fix Defendants implements will diminish performance and fuel economy. She would not have bought the car if it did not offer the combination of performance, fuel economy, and clean emissions that Defendants advertised.

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CA 93101

CLASS ACTION COMPLAINT

**F.     Plaintiff Rachel Otto**

95.     Plaintiff Rachel Otto, a resident of Salt Lake City, Utah, purchased a new 2015 Golf Sportwagen TDI in July 2015 from VW SouthTowne in South Jordan, Utah.

96.     Ms. Otto is a longtime advocate for clean air in Utah, and is painfully aware of the fact that the Salt Lake Valley has among the worst air quality in the nation. When she got a job that required her to commute by car, she did extensive research, and settled on the 2015 Golf Sportwagen TDI expressly because of Volkswagen's perceived and advertised environmentally-friendly record and the promise of "CleanDiesel." Defendants advertised the Golf Sportwagen TDI as offering clean, environmentally-friendly emissions and excellent fuel mileage.

97.     Ms. Otto is outraged, and notes that numerous people in the Salt Lake Valley, like her, drive Volkswagen "CleanDiesel" vehicles because they care about the air quality in the area and were duped by Volkswagen's misrepresentation that the Defeat Device Vehicles were EPA-compliant and environmentally friendly.

98.     Now that she has learned the truth about Volkswagen's use of a "Defeat Device" and her car's emissions, she no longer wishes to own or drive it—and indeed does not want any of these highly-polluting vehicles to be driven in the Salt Lake Valley, contributing to the area's poor air quality—but is concerned that the resale value has been severely diminished by Volkswagen's conduct. She

would never have purchased the car in the first place if she had known the truth about its emissions and was induced to purchase it by Volkswagen's express misrepresentations that these "CleanDiesel" vehicles were clean and environmentally friendly, when in fact they were polluting at up to 40 times the allowable levels.

## G.   Plaintiff Duane Inoue

99.   Plaintiff Mr. Inoue is a resident of Mililani, Hawaii.

100.   Mr. Inoue was interested in buying a diesel car because he cares about the environmental impact of his vehicle.  In addition, Mr. Inoue was attracted to diesel because of the fuel economy and savings on fuel expenditures he expected to receive as a benefit of buying diesel.

101.   Furthermore, Mr. Inoue purchased a diesel car because he believed, based on his research, that the engine would have greater longevity than a standard gasoline car.

102.   Mr. Inoue purchased his 2010 Audi A3 TDI on 20 March 2010 from a dealership in Hawaii named Audi Hawaii, a division of JN Automotive Group. Mr. Inoue was told by Mr. Daryl Tokunaga, sales representative for JN Automotive Group, that the TDI engine was friendly to the environment and it provides better fuel mileage than gasoline.  Mr. Inoue notes that Audi's 2010 brochure for the Audi A3 TDI, which he read in 2010 and still has in his

CLASS ACTION COMPLAINT

possession, states that "TDI emissions are reduced to ultra-low levels thanks to a revolutionary emissions system.  The result is a car that is clean, quiet, powerful and proven."  The same brochure showed a graph that "TDI produces 25% fewer $CO_2$ emissions than gasoline; TDI give 20% more range than gasoline; TDI consumes 30% less fuel than gasoline."

103.   Over the time Mr. Inoue has owned his Audi A3 TDI, he has noticed that the fuel economy was worse than represented.  Instead of getting approximately 45 miles per gallon as Volkswagen represented, he only gets about 35 miles per gallon, and most of his driving is done on the highway when mileage should be best.

104.   Mr. Inoue is disappointed that he paid a premium for a car that pollutes at unlawful levels, and that lacks the performance characteristics, including engine longevity that Volkswagen represented to him.

## H.   Plaintiff Laura Ray

105.   Plaintiff Laura Ray, a resident of Sewanee, Tennessee, purchased a 2010 Volkswagen Jetta Sportwagen with her husband Richard Ray on September 30, 2014 from Cannon Motors, in Lilburn, Georgia. She paid approximately $17,949.

106.   The Jetta Sportwagen she purchased included the following environmental information on a window decal:

31                                    CLASS ACTION COMPLAINT

107.  Ms. Ray tries to be environmentally friendly and purchased the Jetta Sportwagen in part because it was marketed as a "CleanDiesel," offering fuel economy and environmentally friendly emissions combined with excellent performance.

108.  Ms. Ray is concerned about the value of her vehicle and whether removing the offending software will reduce the fuel economy and performance that Defendants touted as qualities of the Jetta Sportwagen. Further, as mandatory EPA emissions testing is required in several Tennessee counties, including neighboring Hamilton County, Tennessee, she is concerned that she will be unable to legally register or operate her vehicle should emissions testing be extended to Marion County, Tennessee or if she and her husband change residence to an county in Tennessee where EPA emissions testing is required.

**I.      Plaintiff Robert Perryman**

109.    Plaintiff Robert Perryman, a resident of Stigler, Oklahoma, bought a new 2015 Passat TDI SEL at a dealership in Tulsa, Oklahoma in May 2015.

110.    Mr. Perryman decided to buy the Passat based on Volkswagen's representations that the vehicle was "clean" and efficient.

111.    Mr. Perryman paid a premium for that mix of characteristics, which as it turns out was based on deception. He believes any recall repair will necessarily diminish his Passat's performance, even if it corrects the unlawful emissions. He intended to eventually resell the Passat, and that resale value has now been reduced due to Volkswagen's deception.

112.    At some point in the next several years, Mr. Perryman was planning to resell or trade in his Passat, and he is devastated that not only is his vehicle harmful to the environment, but it also plummeted in resale value.

**J.      Plaintiff Cynthia Kirtland**

113.    Plaintiff Cynthia Kirtland, a resident of Red Hook, New York, purchased a new 2014 Volkswagen Jetta TDI in September 2013 from a dealership in Kingston, New York. She paid $36,406.

114.    Ms. Kirtland chose the Jetta TDI because Defendants advertised it as environmentally friendly and EPA-compliant. She wanted a "zippy," high-performing car that also offered good fuel mileage and environmentally friendly

emissions, and Volkswagen's advertised "CleanDiesel" TDI engines fit the bill. She paid a premium for the Jetta TDI over other vehicles, such as the gasoline TDI, because it offered these features.

115.    Until she learned of Volkswagen's deception, Ms. Kirtland intended to keep and drive the car for as long as ten years. For this reason, she paid upfront for a long-term maintenance plan. In her eyes, the car is still virtually brand new, and she still owes much of the portion of the purchase price that she financed. As a result of Volkswagen's conduct, however, she believes that the value of the car has been severely diminished, and is afraid that she now owes considerably more than the car is worth.

116.    Ms. Kirtland has been damaged by Volkswagen's fraudulent and deceptive conduct. She would not have purchased her Jetta TDI if she knew the truth about its emissions; nor would she have paid a premium for it.

## K.    Plaintiffs William Harlan and Emily Diznoff

117.    Mr. Harlan and Dr. Diznoff have purchased two Volkswagen Jetta TDI vehicles, one in 2011, and another in 2014.  They bought their Jetta TDIs at the Harmony Motors dealership in Asheville, North Carolina specifically because of Volkswagen's claims of cleaner emissions and the cars' green, environmentally-friendly reputation, which Volkswagen established in its marketing materials.

118.   Mr. Harlan and Dr. Diznoff were very intentional about their selection of vehicles. After carefully studying their options, including the Toyota Prius, they decided that driving a clean diesel from Volkswagen was the cleanest, most environmentally responsible way to get where they needed to travel in their mountainous area.

119.   As noted in a recent article in the Asheville newspaper the Citizen-Times, Mr. Harlan and Dr. Diznoff are serious about the environment and are committed to living a healthy life in the outdoors.

120.   Dr. Diznoff, a family practice physician, is an important community health advocate in the region. For several years, she has celebrated the clean, green benefits of driving a Volkswagen Jetta clean diesel vehicle. Now she must apologize to her patients for boosting Volkswagen's profits by advocating this deceptive, dangerous, and dirty diesel vehicle that is harming people's health.

121.   Mr. Harlan is the five-time champion of the 40-mile Mount Mitchell Challenge.  In addition, he is the longtime editor-in-chief of the Blue Ridge Outdoors magazine, one of the country's premier magazines about the outdoors. He is expected to uphold the highest environmental standards in his personal and professional life. He even touted Volkswagen's clean diesel technology in a feature story. Having benefited Volkswagen through his promotion of their cars, he is now

CLASS ACTION COMPLAINT

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CA 93101

in the unfortunate position of having to retract his statements and apologize for the vehicle he drives to various environmental meetings and events.

122.   Volkswagen's deception and fraud have damaged the couple both personally and professionally.

123.   Now that they know the truth about their Jetta TDI vehicles, Mr. Harlan and Dr. Diznoff feel like frauds themselves.  They are embarrassed to be seen driving their vehicles publicly, and the resale value of their two Jetta TDIs is a shadow of what it was before September 18, 2015.

124.   Mr. Harlan and Dr. Diznoff are outraged to have enriched Volkswagen, both financially and through their own professional endorsements, when Volkswagen knew all along that it was cashing in on its customers' good consciences.

## VII.   CLASS ACTION ALLEGATIONS

125.   Plaintiffs bring this action on behalf of themselves and as a class action, pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following Class:

> All persons or entities in the United States who are current or former owners and/or lessees of a diesel "Defeat Device Vehicle." Defeat Device Vehicles include, without limitation: Model Year ("MY") 2009-2015 Jetta. MY 2009-2014 Jetta Sportwagen, MY 2012-2015 Beetle and Beetle Convertible, MY 2010-2015 Golf, MY 2015 Golf Sportwagen, MY 2012-2015 Passat, and MY 2010-2015 Audi A3.

126.   Excluded from the Class are individuals who have personal injury claims resulting from the "defeat device" in the CleanDiesel system. Also excluded from the Class are Volkswagen and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the judge to whom this case is assigned and his/her immediate family. Plaintiffs reserve the right to revise the Class definition based upon information learned through discovery.

127.   Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

128.   This action has been brought and may be properly maintained on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23.

**1.     Numerosity: Federal Rule of Civil Procedure 23(a)(1).**

129.   The members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. While Plaintiffs are informed and believe that there are not less than hundreds of thousands of members of the Class, the precise number of Class members is unknown to Plaintiffs, but may be ascertained from Volkswagen's records. Class members may be notified of the pendency of this action by recognized, Court-

**KELLER ROHRBACK L.L.P.**
1129 STATE STREET, SUITE 8, SANTA BARBARA, CA 93101

approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

**2.     Commonality and Predominance: Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).**

130.    This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

(a)     Whether Volkswagen engaged in the conduct alleged herein;

(b)     Whether Volkswagen designed, advertised, marketed, distributed, leased, sold, or otherwise placed Defeat Device Vehicles into the stream of commerce in the United States;

(c)     Whether the CleanDiesel engine system in the Defeat Device Vehicles contains a defect in that it does not comply with EPA requirements;

(d)     Whether the CleanDiesel engine systems in Defeat Device Vehicles can be made to comply with EPA standards without substantially degrading the performance and/or efficiency of the Defeat Device Vehicles;

(e)     Whether Volkswagen knew about the "defeat device" and, if so, how long Volkswagen has known;

(f)     Whether Volkswagen designed, manufactured, marketed, and distributed Defeat Device Vehicles with a "defeat device,"

CLASS ACTION COMPLAINT

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CA 93101

(g)     Whether Volkswagen's conduct violates consumer protection statutes, warranty laws, and other laws as asserted herein;

(h)     Whether Plaintiffs and the other Class members overpaid for their Defeat Device Vehicles;

(i)     Whether Plaintiffs and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief; and

(j)     Whether Plaintiffs and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

**3.     Typicality: Federal Rule of Civil Procedure 23(a)(3).**

131.   Plaintiffs' claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Volkswagen's wrongful conduct as described above.

**4.     Adequacy: Federal Rule of Civil Procedure 23(a)(4).**

132.   Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other members of the Class they seek to represent; Plaintiffs have retained counsel competent and experienced in complex class action litigation; and Plaintiffs intend to prosecute this action vigorously. The Class's interests will be fairly and adequately protected by Plaintiffs and their counsel.

### 5. Declaratory and Injunctive Relief: Federal Rule of Civil Procedure 23(b)(2).

133.   Volkswagen has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

### 6. Superiority: Federal Rule of Civil Procedure 23(b)(3).

134.   A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Volkswagen, so it would be impracticable for members of the Class to individually seek redress for Volkswagen's wrongful conduct.

135.   Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

CLASS ACTION COMPLAINT

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CA 93101

## VIII.  ANY APPLICABLE STATUTES OF LIMITATION ARE TOLLED

### A.    Discovery Rule Tolling

136.    The tolling doctrine was made for cases of concealment like this one. For the following reasons, any otherwise-applicable statutes of limitation have been tolled by the discovery rule with respect to all claims.

137.    Through the exercise of reasonable diligence, and within any applicable statutes of limitation, Plaintiffs and members of the proposed Class could not have discovered that Volkswagen was concealing and misrepresenting the true emissions levels of its vehicles, including but not limited to its use of defeat devices.

138.    As reported in *The New York Times* on September 19, 2015, the International Council on Clean Transportation, a research group, first noticed the difference between Volkswagen's emissions in testing laboratories and in normal use on the road. The International Council on Clean Transportation brought the defeat device issue to the attention of the EPA. The EPA, in turn, conducted further tests on the vehicles, and ultimately uncovered the unlawful use of the defeat device software. Thus, Volkswagen's deception with respect to its CleanDiesel engines, engine control systems, and "defeat devices" was painstakingly concealed from consumers and regulators alike.

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CA 93101

139.   Plaintiffs and the other Class members could not reasonably discover, and did not know of facts that would have caused a reasonable person to suspect, that Volkswagen intentionally failed to report information within its knowledge to federal and state authorities, its dealerships, or consumers.

140.   Likewise, a reasonable and diligent investigation could not have disclosed that Volkswagen had information in its sole possession about the existence of its sophisticated emissions deception and that it concealed that information, which was discovered by Plaintiffs immediately before this action was filed. Plaintiffs and other Class members could not have previously learned that Volkswagen valued profits over compliance with applicable federal and state emissions and consumer law.

**B.     Tolling Due To Fraudulent Concealment**

141.   Throughout the relevant time period, all applicable statutes of limitation have been tolled by Volkswagen's knowing and active fraudulent concealment and denial of the facts alleged in this Complaint.

142.   Instead of disclosing its emissions deception, or that the emissions from the Defeat Device Vehicles were far worse than represented, Volkswagen falsely represented that its vehicles complied with federal and state emissions standards, and that it was a reputable manufacturer whose representations could be trusted.

**C.    Estoppel**

143.    Volkswagen was under a continuous duty to disclose to Plaintiffs and the other Class members the facts that it knew about the emissions from Defeat Device Vehicles, and of those vehicles' failure to comply with federal and state laws.

144.    Although it had the duty throughout the relevant period to disclose to Plaintiffs and Class members that it had engaged in the deception described in this Complaint, Volkswagen chose to evade federal and state emissions and clean air standards with respect to the Defeat Device Vehicles, and it intentionally misrepresented its blatant and deceptive lack of compliance with state law regulating vehicle emissions and clean air.

145.    Thus, Volkswagen is estopped from relying on any statutes of limitations in defense of this action.

## IX.    CAUSES OF ACTION

**A.    Claims Asserted on Behalf of the Class**

### COUNT I
### FRAUD BY CONCEALMENT
### (Common Law)

146.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

147.    Plaintiffs bring this claim on behalf of the Class.

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CA 93101

148.   Volkswagen intentionally concealed and suppressed material facts concerning the quality and character of the Defeat Device Vehicles. As alleged in this Complaint, Volkswagen engaged in deception to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutants, which contributes to the creation of ozone and smog.

149.   The software installed on the vehicles at issue was designed nefariously to kick in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road. The result was what Volkswagen's intended: vehicles passed emissions certifications by way of deliberately induced readings that do not reflect normal operations. Reportedly, Volkswagen's deliberate, secret deception resulted in noxious emissions from these vehicles at up to 40 times applicable standards.

150.   Plaintiffs and Class members reasonably relied upon Volkswagen's false representations. They had no way of knowing that Volkswagen's representations were false and gravely misleading. As alleged herein, Volkswagen employed extremely sophisticated methods of deception. Plaintiffs and Class members did not, and could not, unravel Volkswagen's deception on their own.

151.   Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen—one characterized by an emphasis on profits and sales above compliance with federal and state clean air law, and

CLASS ACTION COMPLAINT

emissions regulations that are meant to protect the public and consumers. It also emphasized profits and sales above the trust that Plaintiffs and Class members placed in its representations.

152.   As one representative customer, Kathy Muscato of Rochester, New York, explained in a tweet the day the EPA announced the Notice of Violation, she felt "betrayed" by Volkswagen:

 **Kathy Muscato** @kathymuscato · Sep 18

Why we don't trust brands, people. I bought my diesel Volkswagen Jetta expressly for its clean performance. Feel betrayed.



153.   And a tweet from another representative customer from North Carolina, Associate Professor Joe DeCarolis, stated he'd been "swindled":

CLASS ACTION COMPLAINT

154.   Necessarily, Volkswagen also took steps to ensure that its employees did not reveal the details of its deception to regulators or consumers, including Plaintiffs and Class members. Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers and lessors of its vehicles, including certified previously owned vehicles, that Volkswagen is a reputable manufacturer that complies with applicable law, including federal and state clean air law and

emissions regulations, and that its vehicles likewise comply with applicable laws and regulations.



155.   Volkswagen's false representations were material to consumers, both because they concerned the quality of the Defeat Device Vehicles, including their compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles. As Volkswagen well knew, its customers, including

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CA 93101

Plaintiffs and Class members, highly valued that the vehicles they were purchasing or leasing were clean diesel cars, and they paid accordingly.

156.   Volkswagen had a duty to disclose the emissions deception it engaged in with respect to the vehicles at issue because knowledge of the deception and its details were known and/or accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to implementation and maintenance of its deception, and because Volkswagen knew the facts were unknown to or reasonably discoverable by Plaintiffs or Class members.

157.   Volkswagen also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as clean diesel cars, or cars with clean diesel engines, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its emissions deception, the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air law and emissions regulations, and its actual practices with respect to the vehicles at issue.

158.   Having volunteered to provide information to Plaintiffs and the Class, Volkswagen had the duty to disclose the entire truth. These omitted and concealed facts were material because they directly affect the value of the Defeat Device Vehicles purchased or leased by Plaintiffs and Class members. Whether a

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CA 93101

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CA 93101

manufacturer's products comply with federal and state clean air law and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass. Volkswagen represented to Plaintiffs and Class members that they were purchasing clean diesel vehicles, and certification testing appeared to confirm this—except that, secretly, Volkswagen had thoroughly subverted the testing process.

159.   Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiffs and Class members.

160.   On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding both the emissions qualities of its vehicles and its emissions deception.

161.   Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CA 93101

would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them. Plaintiffs' and Class members' actions were justified. Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiffs, or Class members.

162. Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damages because they own vehicles that are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emissions qualities and quantities of hundreds of thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies. Had Plaintiffs and Class members been aware of Volkswagen's emissions deceptions with regard to the vehicles at issue, and the company's callous disregard for compliance with applicable federal and state law and regulations, Plaintiffs and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

163. The value of Plaintiffs' and Class members' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions deception, which has greatly tarnished the Volkswagen and Audi brand names attached to

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CA 93101

Plaintiffs' and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Defeat Device Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

164.   Accordingly, Volkswagen is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

165.   Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that Volkswagen made to them, in order to enrich Volkswagen. Volkswagen's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

166.   Plaintiffs plead this count pursuant to the law of Virginia, where Volkswagen has its American headquarters, on behalf of all members of the Class. As necessary, and in the alternative, Plaintiffs may allege sub-classes, based on the residences at pertinent times of members of the Class, to allege fraudulent concealment under the laws of states other than Virginia.

## COUNT II
## BREACH OF CONTRACT

167.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

168.   Plaintiffs bring this Count on behalf of the Class.

CLASS ACTION COMPLAINT

169.    Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the "defeat device" and/or defective design as alleged herein, caused Plaintiffs and the other Class members to make their purchases or leases of their Defeat Device Vehicles. Absent those misrepresentations and omissions, Plaintiffs and the other Class members would not have purchased or leased these Defeat Device Vehicles, would not have purchased or leased these Defeat Device Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and the "defeat device." Accordingly, Plaintiffs and the other Class members overpaid for their Defeat Device Vehicles and did not receive the benefit of their bargain.

170.    Each and every sale or lease of a Defeat Device Vehicle constitutes a contract between Volkswagen and the purchaser or lessee. Volkswagen breached these contracts by selling or leasing Plaintiffs and the other Class members defective Defeat Device Vehicles and by misrepresenting or failing to disclose the existence of the "defeat device" and/or defective design, including information known to Volkswagen rendering each Defeat Device Vehicle less safe and emissions compliant, and thus less valuable, than vehicles not equipped with CleanDiesel engine systems and "defeat devices."

171.    As a direct and proximate result of Volkswagen's breach of contract, Plaintiffs and the Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT III
## VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW
### (Cal. Bus. & Prof. Cod §§ 17200, *et seq.*)

172.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

173.    Plaintiffs bring this Count on behalf of the Class.

174.    California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

175.    Volkswagen's conduct, as described herein, was and is in violation of the UCL. Volkswagen's conduct violates the UCL in at least the following ways:

(a)    By knowingly and intentionally concealing from Plaintiffs and the other Class members that the Defeat Device Vehicles suffer from a design defect while obtaining money from Plaintiffs and the Class;

(b)    By marketing Defeat Device Vehicles as possessing functional and defect-free, EPA compliant CleanDiesel engine systems;

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CA 93101

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CA 93101

(c)     By purposefully installing an illegal "defeat device" in the Defeat Device Vehicles to fraudulently obtain EPA and CARB certification and cause Defeat Device Vehicles to pass emissions tests when in truth and fact they did not pass such tests;

(d)     By violating federal laws, including the Clean Air Act; and

(e)     By violating other California laws, including California laws governing vehicle emissions and emission testing requirements.

176.   Volkswagen's misrepresentations and omissions alleged herein caused Plaintiffs and the other Class members to make their purchases or leases of their Defeat Device Vehicles. Absent those misrepresentations and omissions, Plaintiffs and the other Class members would not have purchased or leased these Defeat Device Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain CleanDiesel engine systems that failed to comply with EPA and California emissions standards.

177.   Accordingly, Plaintiffs and the other Class members have suffered injury in fact including lost money or property as a result of Volkswagen's misrepresentations and omissions.

178.   Plaintiffs seek to enjoin further unlawful, unfair, and/or fraudulent acts or practices by Volkswagen under Cal. Bus. & Prof. Code § 17200.

179.   Plaintiffs request that this Court enter such orders or judgments as may be necessary to enjoin Volkswagen from continuing its unfair, unlawful, and/or deceptive practices and to restore to Plaintiffs and members of the Class any money it acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code § 17203 and Cal. Civ. Code § 3345; and for such other relief set forth below.

**COUNT IV**
**BREACH OF EXPRESS WARRANTY**

180.   Plaintiffs incorporate by reference every prior and subsequent allegation of this Complaint as if fully restated here.

181.   Plaintiffs bring a cause of action against Defendant for breach of express warranty on behalf of themselves and the Class.

182.   Defendant made numerous representations, descriptions, and promises to Plaintiffs and Class members regarding the performance and emission controls of its diesel vehicles.

183.   For example, Volkswagen included in manuals for some or all of their Defeat Device Vehicles the warranty that its vehicles were "designed, built and equipped so as to conform at the time of sale with all applicable regulations of the United States Environmental Protection Agency," or similar language.

184.   Volkswagen made similar representations that its emission systems required with state law, for example:

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CA 93101

Volkswagen of America, Inc., an operating unit of Volkswagen Group of America, Inc. (Volkswagen), warrants to the original retail purchaser or original lessee and any subsequent purchaser or lessee that every **model year 2010** Volkswagen vehicle imported by Volkswagen and certified for sale and registered in California:

● was designed, built and equipped so as to conform with all applicable requirements of the California Air Resources Board ("CARB") and

185.   Defendant, however, knew or should have known that its representations, descriptions, and promises were false. Defendant was aware that it had installed defeat devices in the vehicles it sold to Plaintiffs and Class members.

186.   Plaintiffs and Class members reasonably relied on Volkswagen's representations in purchasing "clean" diesel vehicles. Those vehicles, however, did not perform as was warranted. Unbeknownst to Plaintiffs, those vehicles included devices that caused their emission reduction systems to perform at levels worse than advertised. Those devices are defects. Accordingly, Volkswagen breached its express warranty by providing a product containing defects that were never disclosed to the Plaintiffs and Class members.

CLASS ACTION COMPLAINT

187.   As a direct and proximate result of Volkswagen's false and misleading representations and warranties, Plaintiffs and Class members suffered significant damages and seek the relief described below.

## COUNT V
## BREACH OF IMPLIED WARRANTY

188.   Plaintiffs incorporate by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

189.   Plaintiffs bring this cause of action against Volkswagen for breach of implied warranty on behalf of themselves and the Class.

190.   Volkswagen made numerous representations, descriptions, and promises to Plaintiffs and Class members regarding the functionality of Volkswagen's "clean" diesel technology.

191.   Plaintiffs and Class members reasonably relied on Volkswagen's representations in purchasing the Defeat Device vehicles.

192.   As set forth throughout this Complaint, Volkswagen knew that its representations, descriptions and promises regarding its diesel engines were false.

193.   When Plaintiffs and Class members purchased Volkswagen's diesel vehicles, they did not conform to the promises or affirmations of fact made in Volkswagen's promotional materials, including that the vehicles were designed to meet the most demanding environmental standards. Instead, as alleged above,

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CA 93101

those vehicles were designed to cheat those standards, and the vehicles emitted far higher levels of pollution than promised.

194.    Accordingly, the Defeat Device Vehicles failed to conform to Volkswagen's implied warranty regarding their functionality.

195.    As a direct and proximate result of Volkswagen's false and misleading representations and warranties, Plaintiffs and Class members suffered significant injury when Volkswagen sold them cars that, it is now clear, are worth far less than the price Plaintiffs and Class members paid for them. Accordingly, Plaintiffs and the Class seek the relief described below.

**COUNT VI**
**IMPLIED AND WRITTEN WARRANTY**
**Magnuson - Moss Act (15 U.S.C. §§ 2301, *et seq.*)**

196.    Plaintiffs incorporate by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

197.    Plaintiffs assert this cause of action on behalf of themselves and the other members of the Class.

198.    This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 2301(3).

199.    Volkswagen's Defeat Device Vehicles are a "consumer product," as that term is defined in 15 U.S.C. § 2301(1).

CLASS ACTION COMPLAINT

200.    Plaintiffs and Class members are "consumers," as that term is defined in 15 U.S.C. § 2301(3).

201.    Volkswagen is a "warrantor" and "supplier" as those terms are defined in 15 U.S.C. § 2301(4) and (5).

202.    15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with an implied or written warranty.

203.    As described herein, Volkswagen provided Plaintiffs and Class members with "implied warranties" and "written warranties" as those term are defined in 15 U.S.C. § 2301.

204.    Volkswagen has breached these warranties as described in more detail above. Without limitation, Volkswagen's Defeat Device vehicles are defective, as described above, which resulted in the problems and failures also described above.

205.    By Volkswagen's conduct as described herein, including Volkswagen's knowledge of the defects inherent in the vehicles and its action, and inaction, in the face of the knowledge, Volkswagen has failed to comply with its obligations under its written and implied promises, warranties, and representations.

206.    In its capacity as a warrantor, and by the conduct described herein, any attempts by Volkswagen to limit the implied warranties in a manner that would exclude coverage of the defective software and systems is unconscionable and any

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CA 93101

CLASS ACTION COMPLAINT

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CA 93101

such effort to disclaim, or otherwise limit, liability for the defective the software and supporting systems is null and void.

207.   All jurisdictional prerequisites have been satisfied.

208.   Plaintiffs and members of the Class are in privity with Volkswagen in that they purchased the software from Volkswagen or its agents.

209.   As a result of Volkswagen's breach of warranties, Plaintiffs and Class members are entitled to revoke their acceptance of the vehicles, obtain damages and equitable relief, and obtain costs pursuant to 15 U.S.C. §2310.

## COUNT VII
## UNJUST ENRICHMENT

210.   Plaintiffs incorporate by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

211.   Plaintiffs bring this count on behalf of themselves and, where applicable, the Class.

212.   Plaintiffs and members of the Class conferred a benefit on Defendants by, inter alia, using (and paying for) its vehicles.

213.   Defendants has retained this benefit, and know of and appreciate this benefit.

214.   Defendants was and continues to be unjustly enriched at the expense of Plaintiffs and Class members.

215.   Defendants should be required to disgorge this unjust enrichment.

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CA 93101

B.    **State-Specific Claims**

## COUNT VIII
## VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT
### (Cal. Civ. Code §§ 1750, *et seq.*)

216.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

217.    Plaintiffs bring this Count on behalf of California members of the Class.

218.    California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*, proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."

219.    The Defeat Device Vehicles are "goods" as defined in Cal. Civ. Code § 1761(a).

220.    Plaintiffs and the other California members of the Class are "consumers" as defined in Cal. Civ. Code § 1761(d), and Plaintiffs, the other California members of the Class, and Volkswagen are "persons" as defined in Cal. Civ. Code § 1761(c).

221.    As alleged above, Volkswagen made numerous representations concerning the benefits, efficiency, performance and safety features of CleanDiesel engine systems that were misleading.

CLASS ACTION COMPLAINT

222.  In purchasing or leasing the Defeat Device Vehicles, Plaintiffs and the other Class members were deceived by Volkswagen's failure to disclose that the Defeat Device Vehicles were equipped with defective CleanDiesel engine systems that failed EPA and California emissions standards.

223.  Volkswagen's conduct, as described hereinabove, was and is in violation of the CLRA. Volkswagen's conduct violates at least the following enumerated CLRA provisions:

(a)    Cal. Civ. Code § 1770(a)(5): Representing that goods have characteristics, uses, and benefits which they do not have;

(b)    Cal. Civ. Code § 1770(a)(7): Representing that goods are of a particular standard, quality, or grade, if they are of another;

(c)    Cal. Civ. Code § 1770(a)(9): Advertising goods with intent not to sell them as advertised; and

(d)    Cal. Civ. Code § 1770(a)(16): Representing that goods have been supplied in accordance with a previous representation when they have not.

224.  Plaintiffs and the other California members of the Class have suffered injury in fact and actual damages resulting from Volkswagen's material omissions and misrepresentations because they paid an inflated purchase or lease price for the Defeat Device Vehicles and because they stand to pay additional fuel costs if and when their Defeat Device Vehicles are made to comply with emissions standards.

CLASS ACTION COMPLAINT

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CA 93101

225.   Volkswagen knew, should have known, or was reckless in not knowing of the defective design and/or manufacture of the CleanDiesel engine systems, and that the Defeat Device Vehicles were not suitable for their intended use.

226.   The facts concealed and omitted by Volkswagen to Plaintiffs and the other California members of the Class are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Defeat Device Vehicles or pay a lower price. Had Plaintiffs and the other California members of the Class known about the defective nature of the Defeat Device Vehicles, they would not have purchased or leased the Defeat Device Vehicles or would not have paid the prices they paid.

227.   Plaintiffs' and the other California members of the Class' injuries were proximately caused by Volkswagen's fraudulent and deceptive business practices.

## COUNT IX
## VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW
### (Cal. Bus. & Prof. Code §§ 17500, *et seq.*)

228.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

229.   Plaintiffs bring this Count on behalf of the California members of the Class.

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CA 93101

230.   California Bus. & Prof. Code § 17500 states:

It is unlawful for any...corporation...with intent directly or indirectly to dispose of real or personal property...to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated ... from this state before the public in any state, in any newspaper or other publication, or any advertising device, ... or in any other manner or means whatever, including over the Internet, any statement ... which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.

231.   Volkswagen caused to be made or disseminated throughout California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Volkswagen, to be untrue and misleading to consumers, including Plaintiffs and the other Class members.

232.   Volkswagen has violated § 17500 because the misrepresentations and omissions regarding the safety, reliability, and functionality of Defeat Device Vehicles as set forth in this Complaint were material and likely to deceive a reasonable consumer.

233.   Plaintiffs and the other Class members have suffered an injury in fact, including the loss of money or property, as a result of Volkswagen's unfair, unlawful, and/or deceptive practices. In purchasing or leasing their Defeat Device Vehicles, Plaintiffs and the other Class members relied on the misrepresentations and/or omissions of Volkswagen with respect to the safety, performance and

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CA 93101

reliability of the Defeat Device Vehicles. Volkswagen's representations turned out not to be true because the Defeat Device Vehicles are distributed with faulty and defective CleanDiesel engine systems, rendering certain safety and emissions functions inoperative. Had Plaintiffs and the other Class members known this, they would not have purchased or leased their Defeat Device Vehicles and/or paid as much for them. Accordingly, Plaintiffs and the other Class members overpaid for their Defeat Device Vehicles and did not receive the benefit of their bargain.

234.   All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Volkswagen's business. Volkswagen's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the State of California and nationwide.

235.   Plaintiffs, individually and on behalf of the other Class members, request that this Court enter such orders or judgments as may be necessary to enjoin Volkswagen from continuing their unfair, unlawful, and/or deceptive practices and to restore to Plaintiffs and the other Class members any money Volkswagen acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CA 93101

# COUNT X
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Cal. Com. Code § 2314)

236.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

237.   Plaintiffs bring this Count on behalf of the California members of the Class.

238.   Volkswagen is and was at all relevant times a merchant with respect to motor vehicles under Cal. Com. Code § 2104.

239.   A warranty that the Defeat Device Vehicles were in merchantable condition was implied by law in the instant transaction, pursuant to Cal. Com. Code § 2314.

240.   These Defeat Device Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Defeat Device Vehicles are inherently defective in that they do not comply with federal and state emissions standards, rendering certain safety and emissions functions inoperative; and the CleanDiesel engine system was not adequately designed, manufactured, and tested.

241.   Volkswagen was provided notice of these issues by the investigations of the EPA and individual state regulators.

CLASS ACTION COMPLAINT

242.   Plaintiffs and the other Class members have had sufficient direct dealings with either Volkswagen or their agents (dealerships) to establish privity of contract between Volkswagen on one hand and Plaintiffs and the other Class members on the other. Notwithstanding this, privity is not required in this case because Plaintiffs and the other Class members are intended third-party beneficiaries of contracts between Volkswagen and its dealers; specifically, they are the intended beneficiaries of Volkswagen's implied warranties. The dealers were not intended to be the ultimate consumers of the Defeat Device Vehicles and have no rights under the warranty agreements provided with the Defeat Device Vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only. Finally, privity is also not required because Plaintiffs' and the other Class members' Defeat Device Vehicles are dangerous instrumentalities due to the aforementioned defects and nonconformities.

243.   As a direct and proximate result of Volkswagen's breach of the warranties of merchantability, Plaintiffs and the other Class members have been damaged in an amount to be proven at trial.

## COUNT XI
## FRAUD BY CONCEALMENT
### (California Law)

244.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

245.   This claim is brought on behalf of California members of the Class.

246.   Volkswagen intentionally concealed and suppressed material facts concerning the quality of the Defeat Device Vehicles. As alleged in this complaint, notwithstanding references in the very model names of the subject vehicles as "CleanDiesel," or to their engines as "TDI CleanDiesel" engines, Volkswagen engaged in a secret deception to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutant nitrogen oxide, which contributes to the creation of ozone and smog. The software installed on the vehicles at issue was designed nefariously to kick in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road. The result was what Volkswagen intended: vehicles passed emissions certifications by way of deliberately induced false readings. Reportedly, Volkswagen's deliberate, secret deception resulted in noxious emissions from these vehicles at up to 40 times applicable standards.

247.   Plaintiffs and California members of the Class reasonably relied upon Volkswagen's false representations. They had no way of knowing that Volkswagen's representations were false and gravely misleading. As alleged herein, Volkswagen employed extremely sophisticated methods of deception.

CLASS ACTION COMPLAINT

Plaintiffs and California members of the Class did not, and could not, unravel Volkswagen's deception on their own.

248.   Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen—one characterized by an emphasis on profits and sales above compliance with federal and state clean air law, and emissions regulations that are meant to protect the public and consumers. It also emphasized profits and sales about the trust that Plaintiffs and California members of the Class placed in its representations. As one customer, Priya Shah, put it in a quotation cited by the Los Angeles Times in a September 15, 2015 article, "It's just a blatant disregard and intentional manipulation of the system. That's just a whole other level of not only lying to the government, but also lying to your consumer. People buy diesel cars from Volkswagen because they feel they are clean diesel cars." As Ms. Shah put it, "I don't want to be spewing noxious gases into the environment."

249.   Necessarily, Volkswagen also took steps to ensure that its employees did not reveal the details of its deception to regulators or consumers, including Plaintiffs and California members of the Class. Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers and lessors of its vehicles, including certified previously owned vehicles, that Volkswagen is a reputable manufacturer that complies with applicable law, including federal and

state clean air law and emissions regulations, and that its vehicles likewise comply with applicable law and regulations. Volkswagen's false representations were material to consumers, both because they concerned the quality of the Defeat Device Vehicles, including their compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles. As Volkswagen well knew, its customers, including Plaintiffs and California members of the Class, highly valued that the vehicles they were purchasing or leasing were clean diesel cars, and they paid accordingly.

250.   Volkswagen had a duty to disclose the emissions deception it engaged in with respect to the Defeat Device Vehicles because knowledge of the deception and its details were known and/or accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to implementation and maintenance of its deception, and because Volkswagen knew the facts were not known to or reasonably discoverable by Plaintiffs or California members of the Class. Volkswagen also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as clean diesel cars, or cars with clean diesel engines, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its emissions deception,

the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air law and emissions regulations, and its actual practices with respect to the vehicles at issue. Having volunteered to provide information to Plaintiffs, Volkswagen had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Defeat Device Vehicles purchased or leased by Plaintiffs and California members of the Class. Whether a manufacturer's products comply with federal and state clean air law and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass. Volkswagen represented to Plaintiffs and California members of the Class that they were purchasing clean diesel vehicles, and certification testing appeared to confirm this—except that, secretly, Volkswagen had subverted the testing process thoroughly.

251.   Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiffs and California members of the Class.

CLASS ACTION COMPLAINT

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CA 93101

252.   On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Plaintiffs and California members of the Class by concealing material information regarding both the emissions qualities of the Defeat Device Vehicles and its emissions deception.

253.   Plaintiffs and California members of the Class were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them. Plaintiffs' and California members of the Class' actions were justified. Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiffs, or California members of the Class.

254.   Because of the concealment and/or suppression of the facts, Plaintiffs and California members of the Class have sustained damage because they own vehicles that are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emissions qualities and quantities of millions of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies. Had Plaintiffs and California members of the

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CA 93101

Class been aware of Volkswagen's emissions deception with regard to the vehicles at issue, and the company's callous disregard for compliance with applicable federal and state law and regulations, Plaintiffs and California members of the Class who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

255.   The value of Plaintiffs' and California members of the Class' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions deception, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiffs' and California members of the Class' vehicles and made any reasonable consumer reluctant to purchase any of the Defeat Device Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

256.   Accordingly, Volkswagen is liable to Plaintiffs and California members of the Class for damages in an amount to be proven at trial.

257.   Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs and California members of the Class' rights and the representations that Volkswagen made to them, in order to enrich Volkswagen. Volkswagen's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

258.   Plaintiffs plead this count pursuant to the law of California on behalf of all California members of the Class.

## COUNT XII
## VIOLATION OF SONG-BEVERLY CONSUMER WARRANTY ACT FOR BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Cal. Civ. Code §§ 1791.1 & 1792)

259.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

260.   Plaintiffs bring this Count on behalf of the California members of the Class.

261.   Plaintiffs and the other Class members who purchased or leased the Defeat Device Vehicles in California are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

262.   The Defeat Device Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

263.   Volkswagen is a "manufacturer" of the Defeat Device Vehicles within the meaning of Cal. Civ. Code § 1791(j).

264.   Volkswagen impliedly warranted to Plaintiffs and the other Class members that its Defeat Device Vehicles were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) & 1792, however, the Defeat Device Vehicles do not have the quality that a buyer would reasonably expect.

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CA 93101

265.   Cal. Civ. Code § 1791.1(a) states: "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:

(a)   Pass without objection in the trade under the contract description.

(b)   Are fit for the ordinary purposes for which such goods are used.

(c)   Are adequately contained, packaged, and labeled.

(d)   Conform to the promises or affirmations of fact made on the container or label.

266.   The Defeat Device Vehicles would not pass without objection in the automotive trade because they do not pass EPA and state law emissions regulations.

267.   Because the "defeat device" falsely causes Defeat Device Vehicles to obtain EPA certification and pass emissions tests when in fact they omit 40 times the permitted level of NOx, they are not safe to drive and thus not fit for ordinary purposes.

268.   The Defeat Device Vehicles are not adequately labeled because the labeling fails to disclose the "defeat device" that causes emissions systems of the Defeat Device Vehicles to become inoperative during normal use.

269.   Volkswagen breached the implied warranty of merchantability by manufacturing and selling Defeat Device Vehicles containing the "defeat device."

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CA 93101

Furthermore, Volkswagen's fraudulent use of the "defeat device" has caused Plaintiffs and the other Class members to not receive the benefit of their bargain and has caused Defeat Device Vehicles to depreciate in value.

270.   As a direct and proximate result of Volkswagen's breach of the implied warranty of merchantability, Plaintiffs and the other Class members received goods whose dangerous and dysfunctional condition substantially impairs their value to Plaintiffs and the other Class members. Plaintiffs and the other Class members have been damaged as a result of the diminished value of Volkswagen's products, the products' malfunctioning, and the nonuse of their Defeat Device Vehicles.

271.   Pursuant to Cal. Civ. Code §§ 1791.1(d) & 1794, Plaintiffs and the other Class members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Defeat Device Vehicles, or the overpayment or diminution in value of their Defeat Device Vehicles.

272.   Pursuant to Cal. Civ. Code § 1794, Plaintiffs and the other Class members are entitled to costs and attorneys' fees.

## COUNT XIII
## VIOLATION OF THE OHIO CONSUMER SALES PRACTICES ACT
### (Ohio Rev. Code §§ 1345.01 *et seq.*)

273.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

CLASS ACTION COMPLAINT

274.   Plaintiffs bring this Count on behalf of the Ohio members of the Class.

275.   The Ohio Consumer Sales Practices Act ("OCSPA") is codified at Ohio Rev. Code § 1345.01 *et seq.* The OCSPA prohibits a supplier from committing an unfair or deceptive act or practice in connection with a consumer transaction.  Ohio Rev. Code § 1345.02(A).  The statute is broad, defining a consumer transaction as "a sale, lease, assignment … of an item of goods … to an individual for purposes that are primarily personal, family, or household [uses]." Ohio Rev. Code § 1345.01(A).  The OCSPA further provides that "a consumer" has a private cause of action for violations of the statute.  Ohio Rev. Code § 1345.09.

276.   Volkswagen is a "supplier" as defined by the OCSPA, Ohio Rev. Code § 1345.09 (C), and Plaintiffs and the class members are "consumers" under the OCSPA. Ohio Rev. Code § 1345.09 (D).

277.   Volkswagen had a statutory duty to refrain from unfair or deceptive acts or practices in the design, development, promotion, sale and/or manufacture of the unlawful Defeat Device Vehicles.

278.   Volkswagen engaged in unfair and deceptive practices by representing that the Defeat Device Vehicles —which were marketed for personal, family, or household uses — have characteristics, uses, benefits, and qualities which they do

not have, such as low emissions; and (2) intentionally failing to disclose and/or concealing the known defects of the Defeat Device Vehicles.

279.   It is well established in OCSPA jurisprudence that material omissions and misrepresentations concerning a product constitute a violation of the statute.  It is also considered a deceptive act or practice for purposes of the OCSPA if a supplier makes representations, claims or assertions of fact in the absence of a reasonable basis in fact.  Ohio Admin. Code § 109:4-3-10(A).  Defendants had no reasonable basis in fact for the representations it made that the Defeat Device Vehicles were "CleanDiesel" or offered efficient fuel economy and environmentally friendly emissions combined with excellent performance.  Indeed, Defendants intentionally designed the defeat device and then actively concealed it and the defects with the Defeat Device Vehicles from regulators and consumers.

280.   The facts concealed and/or not disclosed by Volkswagen Companies to Plaintiffs and members of the Class are material facts that a reasonable person would have considered important in deciding whether or not to purchase a Defeat Device Vehicle.

281.   Volkswagen's unlawful and deceptive practices were designed to mislead a reasonable customer and to induce customers into buying or leasing Defeat Device Vehicles, and, in fact, Volkswagen's practices caused Plaintiffs and

CLASS ACTION COMPLAINT

class members to not only purchase but also pay a premium for the Defeat Device Vehicles where they otherwise would not have done so.

282.   Those unlawful and deceptive acts has further caused damages to Plaintiffs and the Class who now own a vehicle (or vehicles) with a diminished resale value.

283.   As Volkswagen's unlawful actions damaged Plaintiffs and the Class, they are entitled to damages and other relief, including attorneys' fees, as provided under the OCSPA.

## COUNT XIV
## VIOLATION OF THE COLORADO CONSUMER PROTECTION ACT
### (Colo. Rev. Stat. §§ 6-1-101, *et seq.*)

284.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

285.   Plaintiffs bring this Count on behalf of the Colorado members of the Class.

286.   The Colorado Consumer Protection Act ("CCPA") prohibits "deceptive trade practices," including knowingly making "a false representation as to the source, sponsorship, approval, or certification of goods," or "a false representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods." Colo. Rev. Stat. § 6-1-105(1)(b), (e).

CLASS ACTION COMPLAINT

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CA 93101

287.   Plaintiffs and Class members are persons under the CCPA. *See* Colo. Rev. Stat. § 6-1-102.

288.   Plaintiffs and Class members are actual or potential consumers of Volkswagen's goods because, among other things, they bought or leased vehicles from Volskwagen. *Id.* § 6-1-113(1)(a).

289.   Plaintiffs bought or leased those vehicles because of the deceptive trade practices described in this Complaint: Volkswagen's intentional design, marketing, and sale of diesel engines with the intent to deceive regulators and the public into thinking those engines were "clean."

290.   In the course of Volkswagen's business, it willfully misrepresented and failed to disclose, and actively concealed, that the CleanDiesel Engine System was non-EPA compliant, and the use of the "defeat device" in Affected Vehicles as described above.

291.   Volkswagen therefore knowingly made false representations concerning goods, services, or property, and Volkswagen advertised goods, services, or property under certain ulterior or secretive motives, in violations of the CCPA.

292.   Plaintiff and the other Class members were injured as a result of Volkswagen's violations because they paid a premium for Defeat Device vehicles

CLASS ACTION COMPLAINT

and did not receive the benefit of their bargain, and those vehicles have suffered a diminution in value.

293.   Volkswagen's deceptive acts also present an ongoing risk to Plaintiffs and the class because its vehicles emit unlawful and harmful levels of emissions.

## COUNT XV
## VIOLATION OF THE MARYLAND CONSUMER PROTECTION ACT
### (Md. Code Ann., Com. Law § 13-102 *et seq.*)

294.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

295.   Plaintiffs bring this Count on behalf of the Maryland members of the Class.

296.   The Maryland Consumer Protection Act ("MCPA" or "Act") sets "minimum statewide standards for the protection of consumers across the State" and prohibits unfair and deceptive trade practices in the offer, sale, lease, rental, or loan of any consumer good. Md. Code Ann., Com. Law §§ 13-102(b)(1), 13-303(1)-(2).

297.   Plaintiffs and Class members are consumers under the MCPA. See Md. Code Ann., Com. Law § 13-101(c)(1).

298.   Plaintiffs' and Class members' purchase or lease of Defeat Device Vehicles are non-commercial transactions covered by the Act. See id. § 13-303(1)-(2),

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CA 93101

CLASS ACTION COMPLAINT

299.   Volkswagen's intentional design, marketing, and sale of dirty diesel engines as "clean," and Volkswagen's subsequent attempt to conceal that scheme, constitutes a knowing deception, misrepresentation, suppression, concealment, or omission of a material fact of great importance to the transactions at issue: Plaintiffs' and Class members' decision to buy Volkswagen diesels.

300.   Those unfair or deceptive practices have harmed Plaintiffs and Class members: they paid a premium for "clean" diesel vehicles that are, in fact, dirty, and the resale value of those cars has fallen.

## COUNT XVI
## VIOLATION OF UTAH CONSUMER SALES PRACTICES ACT
### (Utah Code Ann. § 13-11-1 *et seq.*)

301.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

302.   Plaintiffs bring this Count on behalf of the Utah members of the Class.

303.   The purpose of the Utah Consumer Sales Practices is "to protect consumers from suppliers who commit deceptive and unconscionable sales practices[.]" Utah Code Ann. § 13-11-2.

304.   As a manufacturer, distributor, and seller of commercial vehicles, Volkswagen is a "supplier" under the Act. When Plaintiff and Class members bought or leased vehicles, those were "consumer transactions" under the Act.

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CA 93101

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CA 93101

305.   By surreptitiously installing "defeat devices" in its diesel engines to cheat regulators and deceive the public, Volkswagen knowingly and intentionally engaged in deceptive and unconscionable trade practices. It was not a bona fide error.

306.   By deceiving the public and regulators and touting their diesel passenger cars as "clean," low-emission vehicles, Volkswagen unlawfully indicated that the "subject of the consumer transaction"—the Defeat Device Vehicles—had some "sponsorship, approval, performance characteristics, accessories, uses, or benefits" that they did not, and that those vehicles were of a "standard, quality, grade, style or model" that they were not.

307.   As a result of Volkswagen's deceptive and unconscionable behavior, Plaintiffs and the Class have suffered losses and are entitled to actual damages or $2,000, whichever is greater, as well as court costs and fees.

## COUNT XVII
## VIOLATION OF HAWAII UNIFORM DECEPTIVE TRADE PRACTICES ACT
## ("Hawaii UDTPA")

308.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

309.   Plaintiffs bring this Count on behalf of the Hawaii members of the Class.

CLASS ACTION COMPLAINT

310.   Plaintiffs and members of the Class are persons under Haw. Rev. Stat. § 480-2.

311.   Volkswagen is engaged in trade and commerce under Haw. Rev. Stat. § 480-2.

312.   Volkswagen's conduct has caused and continues to cause substantial injury to Plaintiffs, Hawaii consumers.

313.   Consumers paid a premium for Defeat Device Vehicles based on Volkswagen's material representations about their low emissions, fuel efficiency, and performance.

314.   Those representations, which were likely to mislead consumers acting reasonably under the circumstances, have now been established to be false.

315.   Consumers' Defeat Device Vehicles have precipitously lost value since the truth about them surfaced on September 18, 2015.

316.   Because Plaintiffs and other consumers reasonably relied on Volkswagen's material representations about the Defeat Device Vehicles, they could not have reasonably avoided their injury.

317.   Volkswagen's unfair and deceptive practices directly, foreseeably, and proximately caused Plaintiffs and the Class an ascertainable loss and other damages.

CLASS ACTION COMPLAINT

# COUNT XVIII
## VIOLATION OF GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (O.C.G.A. § 10-1-370, *et seq.*)

318.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

319.   Plaintiffs bring this Count on behalf of the Georgia members of the Class.

320.   The Georgia Uniform Deceptive Trade Practices Act ("Georgia UDTPA"), prohibits "deceptive trade practices," including the "misrepresentation of standard or quality of goods or services," and "engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding." O.C.G.A. § 10-1-372(a).

321.   Volkswagen, Plaintiffs, and Class members are persons under the UDTPA. Id. § 10-1-371(5).

322.   By surreptitiously installing "defeat devices" in its diesel engines to cheat regulators and deceive the public, Volkswagen engaged in deceptive trade practices prohibited by the Georgia UDTPA. Volkswagen also actively concealed the true nature of the defeat device and misrepresented that Defeat Device vehicles had characteristics, like low emissions, that they do not.

CLASS ACTION COMPLAINT

323.   Volkswagen has known of its use of the "defeat device" and the true nature of its CleanDiesel engine system, but it concealed that until regulators forced Volkswagen to disclose it.

324.   Plaintiffs and Class members reasonably relied on Volkswagen's unfair or deceptive acts or practices, which were likely to and did in fact deceive reasonable persons like themselves. That reliance was to the detriment of Plaintiffs and Class members, who have suffered injury as a result, including the diminished value of their property.

325.   Going forward, Plaintiffs and the class are likely to be damaged by Volkswagen's deceptive trade practices because, inter alia, the value of the vehicles they leased or purchased have been greatly diminished, and any recall repair is likely to impair the performance of their vehicles.

## COUNT XVIX
## VIOLATION OF OKLAHOMA CONSUMER PROTECTION ACT
### (15 Ok. Stat. § 15-751 *et seq.*)

326.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

327.   Plaintiffs bring this Count on behalf of the Oklahoma members of the Class.

328.   Oklahoma's Consumer Protection Act ("OCPA") prohibits, among other things, misrepresenting that goods or services have certain characteristics,

ingredients, uses, or benefits; misrepresenting that goods or services are of a particular standard, quality, grade, style, or model; advertising goods or services with intent not to sell them as advertised; and committing any unfair or deceptive trade practice, including any misrepresentation, omission or other practice that deceives or could reasonably be expected to deceive or mislead a person to that person's detriment. 15 Ok. Stat. §§ 15-752, 753.

329.   Defendants and Plaintiffs are both "Persons" under the OCPA. *Id.* § 15-752. When Plaintiffs and the other Class members bought or leased Defeat Device Vehicles, or otherwise transacted with Defendants and its agents, it was a "consumer transaction" under the OCPA. *Id.*

330.   And Plaintiffs and the Class members bought or leased those vehicles primarily for personal, household, or business purposes.

331.   In manufacturing, marketing, and selling Defeat Device Vehicles, Defendants willfully failed to disclose and actively concealed the "defeat device" in those vehicles, as described in detail elsewhere in this complaint, thereby violating the OCPA.

332.   Defendants did so with the intent to mislead or deceive consumers like Plaintiffs and the Class, and as a result of relying on that deception Plaintiffs and the class were injured by the violation and have suffered actual losses.

CLASS ACTION COMPLAINT

333.   Plaintiffs and Class members therefore allege and demand that Defendants is liable to them for the payment of their actual damages and the costs of litigation, including reasonable attorney's fees. Id., § 15-761.1.

## COUNT XX
## VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349
## (N.Y. Gen. Bus. Law § 349)

334.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

335.   Plaintiffs bring this Count on behalf of the New York members of the Class.

336.   New York's General Business Law § 349 makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce."

337.   Volkswagen, in designing, marketing, and selling unlawful Defeat Device Vehicles, engaged in deceptive and unfair practices directed at consumers in violation of § 349. That includes representing that Defeat Device Vehicles have characteristics, uses, benefits, and qualities which they do not have, such as low emissions, statements that would mislead a reasonable consumer.

338.   Those deceptive practices caused damages to Plaintiffs and the Class, by, among other things, causing them to pay a premium for purportedly "clean" diesels and causing them to come into possession of a vehicle (or vehicles) that now has a diminished resale value.

339.    Volkswagen's deception implicates the public interest because Volkswagen represented that its vehicles complied with state and federal pollution laws designed to protect public health.

## COUNT XXI
## VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 350
### (N.Y. Gen. Bus. Law § 350)

340.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

341.    Plaintiffs bring this Count on behalf of the New York members of the Class.

342.    New York's General Business Law § 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce," including "labeling, of a commodity . . . if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in the light of . . . representations [made] with respect to the commodity . . . ."

343.    Volkswagen caused to be made or disseminated throughout New York, through advertising, marketing, and other publications, statements that were designed to, and in fact did, deceive reasonable consumers acting reasonably under the circumstances, in violation of N.Y. Gen. Bus. Law § 350.

CLASS ACTION COMPLAINT

344.   Volkswagen's misrepresentations and omissions regarding the EPA compliance or clean nature of its vehicles was misleading in a material respect; those statements were at the core of Volkswagen's marketing.

345.   Plaintiffs and the other Class members reasonably relied on those statements and, as a result, have suffered injury, including the loss of money or property. Had Plaintiffs and the other Class members known the truth about Volkswagen's Defeat Device Vehicles, they would not have purchased or leased those vehicles, or would have paid far less to do so.

346.   Volkswagen acted willfully or knowingly in deceiving Plaintiffs and the other Class members, who are therefore entitled to treble damages.

## COUNT XXII
## VIOLATION OF THE NORTH CAROLINA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT
### (N.C. Gen. Stat. §§ 75-1.1, *et seq.*)

347.   Plaintiffs incorporate by reference all preceding allegations as if fulling set forth herein.

348.   Plaintiffs bring this claim on behalf of the North Carolina members of the Class.

349.   Under the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §§ 75-1.1, *et seq.* ("UDTPA"), it is unlawful to engage in "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce[.]"

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CA 93101

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CA 93101

350.   Volkswagen's marketing and selling of Defeat Device Vehicles affected commerce, as defined in the UDTPA.

351.   Defendants willfully concealed and/or failed to disclose the fact that the CleanDiesel engines in the Defeat Device Vehicles did not comply with state and federal regulations.

352.   Defendants also concealed and/or failed to disclose the fact that the CleanDiesel Engines contained defeat devices.

353.   As a result, Defendants has engaged in unlawful trade practices, and have represented that the Defeat Device Vehicles have characteristics and qualities that they do not, in fact, possess; represented that the Defeat Device Vehicles are of a particular quality or standard when they are not; advertising the Defeat Device Vehicles with the intent not to deliver or sell them as advertised; and otherwise engaging in conducted intended or likely to deceive.

354.   Volkswagen's conduct has caused the injuries to Plaintiffs and the Class.

355.   Having acted with willful and conscious disregard of the rights and safety of others, subjecting Plaintiffs and the Class to cruel and unjust hardship as a result, Plaintiffs and the Class should be awarded punitive damages.

CLASS ACTION COMPLAINT

356.   Plaintiffs, individually and on behalf of the Class, seek treble damages pursuant to N.C. Gen. Stat. § 75-16, and an award of attorney's fees pursuant to N.C. Gen. Stat. § 75-16.1.

## X.   REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of members of the Class respectfully request that the Court enter judgment in their favor and against Volkswagen, as follows:

A.   Certification of the proposed Class, including appointment of Plaintiffs' counsel as Class Counsel;

B.   An order temporarily and permanently enjoining Volkswagen from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C.   Injunctive relief in the form of a recall or free replacement program as well as public injunctive relief necessary to protect public health and welfare;

D.   Costs, restitution, damages, and disgorgement in an amount to be determined at trial;

E.   Revocation of acceptance;

F.   Damages under the Magnuson-Moss Warranty Act;

G.   For treble and/or punitive damages as permitted by applicable laws;

CLASS ACTION COMPLAINT

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CA 93101

H.     An order requiring Volkswagen to pay both pre- and post-judgment interest on any amounts awarded;

I.     An award of costs and attorneys' fees; and

J.     Such other or further relief as may be appropriate.

## XI.    DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial.

RESPECTFULLY SUBMITTED this 23rd day of September, 2015.

KELLER ROHRBACK L.L.P.

By */s/Matthew J. Preusch*

Matthew J. Preusch (Bar No. 298144)
mpreusch@kellerrohrback.com
Keller Rohrback L.L.P.
1129 State Street, Suite 8
Santa Barbara, CA 93101
(805) 456-1496, Fax (805) 456-1497

Lynn Lincoln Sarko*
Gretchen Freeman Cappio*
Daniel P. Mensher*
Ryan McDevitt*
**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
Tel: (206) 623-1900
Fax: (206) 623-3384
lsarko@ kellerrohrback.com
gcappio@kellerrohrback.com
dmensher@kellerrohrback.com
rmcdevitt@kellerrohrback.com

*Attorneys for Plaintiffs*
*\* Pro Hac Vice forthcoming*

CLASS ACTION COMPLAINT